IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENNIS SHIPMAN,

    *Plaintiff*,

    v.

BALTIMORE POLICE
DEPARTMENT, *et al.*,

    *Defendants*.

Civil Action No. ELH-13-0396

**MEMORANDUM OPINION**

One morning, plaintiff Dennis Shipman parked his tractor at a surface parking lot in Baltimore, allegedly with the permission of the store manager of the CVS, the anchor tenant. When plaintiff returned that evening, his tractor was gone.  Believing that his tractor was stolen, plaintiff called the Baltimore City Police Department ("BPD") and filed a police report.  Plaintiff later learned that the tractor had, in fact, been towed by Greenwood Towing ("Greenwood").

This sequence of events forms the factual background of plaintiff's Complaint (ECF 1), which he filed *pro se*.[1]  In the Complaint, plaintiff sets forth ten causes of action against five defendants: BPD; Mark A. Grimes, Chief Legal Counsel for BPD; James H. Green, Deputy Chief Legal Counsel for BPD;[2] Greenwood; and "Lateef A. Adenekan Insurance"

---

[1] Although plaintiff is self-represented, he states in his Complaint that he is "a seasoned federal litigator."  Complaint ¶ 1.  Nonetheless, I have construed plaintiff's Complaint liberally, as required by *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

[2] I will refer to BPD, Green, and Grimes collectively as the "BPD Defendants".

("Adenekan").[3]  *See id.* at 1.  Plaintiff does not distinguish among the defendants in asserting his ten causes of action, all of which arise under the United States Constitution or Maryland law.[4] The causes of action are as follows: Due Process (Count I); Unlawful Seizure (Count II); Negligence (Count III); Official Misconduct (Count IV); Conspiracy (Count V); Collusion (Count VI); Conversion (Count VII); Intentional Infliction of Emotional Distress (Count VIII); Equal Protection (Count IX); and Tortious Interference (Count X).   In essence, Shipman complains that Greenwood had no authority to tow his tractor, that BPD violated several laws in its investigation of the incident, and that Adenekan failed to secure adequate insurance coverage for plaintiff.

Greenwood filed a Motion to Dismiss ("Greenwood Motion," ECF 8).   The BPD Defendants filed a joint Motion to Dismiss, or in the alternative, for Partial Summary Judgment ("BPD Motion," ECF 9).[5]   Plaintiff filed an Opposition (ECF 14), ostensibly to both motions. The Opposition consists largely of a lengthy recitation of the legal standard for summary judgment motions; it contains almost no reference to plaintiff's case or to the substance of defendants' motions to dismiss.

No hearing is necessary is resolve the motions.  *See* Local Rule 105.6.  For the reasons set forth below, I will grant both motions to dismiss with respect to plaintiff's federal claims

---

[3] It is not entirely clear whether Adenekan has sued a business entity or an individual. Although the caption suggests that Adenekan is a business entity, the text of the Complaint suggests otherwise.  *See*, *e.g.*, Complaint ¶¶ 27–30.

[4] Plaintiff lists his causes of action as "First Cause of Action," "Second Cause of Action," etc.  For convenience, I will refer to them as Count I, Count II, etc.

[5] Adenekan did not answer or otherwise respond to the Complaint.  On November 22, 2013, plaintiff moved for Clerk's Entry of Default with respect to Adenekan.  ECF 15.  The Clerk entered default on December 5, 2013.  *See* ECF 16.  However, a default judgment has not been requested or entered against Adenekan.

(Counts I, II, and IX), with prejudice.  As to plaintiff's claims under Maryland law (Counts III, IV, V, VI, VII, VIII, and X), I decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(3).  Therefore, I will dismiss the State law claims, without prejudice to plaintiff's right to pursue them in State court.[6]

## Factual Summary[7]

"On or about December 8, 2012, at approximately 8:00 [a.m.], plaintiff parked his tractor, which is his sole asset," in the parking lot for a CVS pharmacy on Belair Road in Baltimore.  Complaint ¶ 3.  Plaintiff claims that he had permission to do so from "the anchor store management," *i.e.*, CVS.  *Id.*  A company called Frankfort Towing had its signage posted in the parking lot, but Greenwood did not post its own signage.  *Id.* ¶¶ 31–32, 45.  At approximately 5:00 p.m. the same day, plaintiff returned to the parking lot and found that his tractor, a 1986 vehicle valued at $6,500, was not on the lot.  *Id.* ¶¶ 5, 15, 18.  As a result, plaintiff called the CVS store.  *Id.* ¶ 19.  "Management denied knowing who had unlawfully removed plaintiff's tractor,"  *id.* ¶ 20, and advised plaintiff that "it is not their policy to authorize tows from the parking lot." *Id.* ¶ 21.

After plaintiff called 911, he was contacted by a police officer from the Eastern District of BPD.  *Id.* ¶¶ 22–23.  According to plaintiff, the officer "had an engagement to attend a dinner party out-of-state" and "suggested that plaintiff ask that an officer meet him at the location to make a stolen vehicle report. *Id.* ¶ 23.  An officer later met plaintiff at the CVS parking lot, at which point plaintiff gave the officer a copy of the tractor's title.  *Id.* ¶ 24.  The officer issued

---

[6] I express no view as to the merits of the State claims.

[7] The facts are gleaned from the Complaint.  As required, I have assumed the truth of the factual allegations and construed them in the light most favorable to plaintiff.  *See, e.g.*, *Brockington v. Boykins*, 637 F.3d 503, 505–06 (4th Cir. 2011).

police report number 124L3499.  *Id.*  Three days later, on December 11, 2012, plaintiff e-mailed BPD, requesting a status update on the stolen vehicle report.  *Id.* ¶ 27.  Plaintiff did not receive a response.  *Id.* ¶ 28.  Plaintiff later sent several letters to BPD Commissioner Anthony Batts, who also did not respond.  *Id.* ¶ 38.

It also appears that plaintiff e-mailed Adenekan to advise that his tractor had been stolen. *See id.* ¶¶ 27, 29.  But, Adenekan "never filed a claim with Progressive[,] contending he did not know that the truck was stolen," despite plaintiff's emails of December 12, 2012, informing Adenekan of the theft.  *Id.* ¶ 29. And, according to plaintiff, Adenekan "neglected to add coverage sufficient to cover the economic losses plaintiff has suffered."  *Id.* ¶ 30.[8]

"To protect his only asset, plaintiff filed for Chapter 7 bankruptcy protection . . . on or about December 12, 2012."  *Id.* ¶ 31.  In his bankruptcy petition, plaintiff named Frankfort Towing as a creditor.  *Id.* ¶ 31.  On December 13, 2012, a BPD employee called plaintiff, asking him to verify the VIN on the tractor.  *Id.* ¶ 25.  Plaintiff provided the employee with the tractor's VIN.  *Id.* ¶ 26.

Plaintiff alleges that, at some point after December 8, 2012, Greenwood placed its signage in the CVS parking lot.  *See id.* ¶¶ 33–36.  According to plaintiff, Greenwood only placed the signage at the lot because "either the property owner or someone in the police department contacted Greenwood Towing and told them to *immediately* post signage."  *Id.* ¶ 35 (emphasis in original).  This allegation forms the basis of plaintiff's "conspiracy" and "collusion" causes of action.  *See id.*

---

[8] *See Sadler v. Loomis Co.*, 139 Md. App. 374, 776 A.2d 25 (2001) (declining to recognize negligence claim against insurance broker for failure to render unsolicited advice in regard to whether an insured should obtain greater liability coverage).

On or about December 20, 2012, Green contacted plaintiff.  *Id.* ¶ 39.  Plaintiff alleges that Green was "extraordinarily abrasive and, consequently, disrespectful."  *Id.*  Green and plaintiff later exchanged e-mail correspondence "that culminated in Green finally informing plaintiff that the tractor was . . . listed in the National Crime Information Center (hereinafter "NCIC") as 'stolen' on or about December 12, 2012."  *Id.*  Green also informed plaintiff that the tractor was in the possession of Greenwood, and he suggested that plaintiff contact Greenwood directly.  *Id.* ¶ 41.[9]

At some point, plaintiff contacted Francis McCauley, a member of Progressive Insurance's auto theft unit.  *Id.* ¶ 42.  McCauley informed plaintiff that he "could find no evidence the tractor had been reported stolen by BPD and entered into [the NCIC] . . . until Friday, February 1, 2013."  *Id.* ¶ 43.  After learning this information, plaintiff "immediately sent a letter to BPD by facsimile; electronic and regular mail stating, 'We appreciate that information but it lacks significant details like who legally authorized this truck to be "towed" under Maryland law?[']"  *Id.* ¶ 44.

Plaintiff's Complaint contains a series of rhetorical questions, including, *id.* ¶¶ 48–50:

- [If] a "stolen vehicle" report was immediately entered [according to the BPD lawyer's representation], why were Greenwood company officials not "arrested" for thief, grand larceny, and possession of stolen property once BPD learned they had this vehicle?
- What due diligence was conducted to determine they possessed any right under the law to "tow" a privately owned vehicle?
- Why was plaintiff not notified until Friday, February 1, 2013 that this company had his tractor until he promised to bring suit on Monday?

---

[9] It is unclear from the Complaint when Green notified plaintiff that the tractor was in the possession of Greenwood, although plaintiff suggests later in the Complaint that it was not until February 1, 2013.  *See* Complaint ¶ 50.

Finally, plaintiff alleges that he "has shown extraordinary diligence in trying to locate his sole asset," and that "defendants have conspired and concluded to deprive him of constitutionally protected rights while acting under 'color of law,' which exposes them to not only civil liability but criminal penalties." *Id.* ¶ 51.[10]

Additional facts will be included in the Discussion.

### Standard of Review[11]

A motion pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In order to satisfy Rule 8(a)(2), a plaintiff need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. But, the rule demands more than bald accusations or mere speculation. *Id.*; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To

---

[10] The filings in the case do not reveal whether plaintiff has recovered his tractor.

[11] As noted, BPD has moved to dismiss or, in the alternative, for summary judgment. Because I grant BPD's motion to dismiss, I need not address the merits of BPD's arguments in support of summary judgment. *See In re Art Tech. Grp., Inc. Sec. Litig.*, 394 F. Supp. 2d 313, 319 (D. Mass. 2005) ("[Because] the Complaint does not survive the defendants' renewed motion to dismiss . . . , this court will not address the defendants' alternative grounds for summary judgment."); *cf. McKeel v. United States*, 178 F. Supp. 2d 493, 496 (D. Md. 2001) ("I shall grant the government's motion to dismiss; the motion for summary judgment is therefore moot.").

satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Similarly, the defendant's motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385–86.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Society Without A Name v. Virginia*, 655 F.3d

342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012).  "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'"  *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201–02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'  Dismissal is appropriate if the law simply affords no relief.") (internal citation omitted).

A motion asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6).  *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

## Discussion

### 1.

Plaintiff's Complaint contains three counts arising under federal law:  Count I alleges a violation of the Due Process Clause of the Fourteenth Amendment to the United States

Constitution; Count II alleges an unlawful seizure, in violation of the Fourteenth Amendment to the United States Constitution; and Count IX alleges a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  The Complaint does not specify the ways in which the defendants allegedly violated the Constitution.

None of the constitutional provisions relied upon by plaintiff provides a private cause of action.  However, 42 U.S.C. § 1983 "provides a cause of action for all citizens injured by an abridgment of those protections."  *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 119–20 (1992).  Plaintiff does not mention 42 U.S.C. § 1983 in his Complaint.  But, because of Shipman's *pro se* status, I will construe Counts I, II, and IX as an attempt to assert claims under 42 U.S.C. § 1983.  *See Pardus*, 551 U.S. at 93.

Plaintiff seems to allege, *inter alia,* that, when his tractor was towed, he was deprived of his property without due process of law, in violation of the Fourteenth Amendment.  The Due Process Clause of the Fourteenth Amendment provides, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.  In general, in order to succeed on a due process claim, the plaintiff must show: (1) that he "has a constitutionally protected 'liberty' or 'property' interest"; and (2) that he "has been 'deprived' of that protected interest by some form of 'state action.'"  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).

Of import here, the Due Process Clause "'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'"  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  Therefore, in a claim under the Fourteenth Amendment, the defendant "must either be a state

actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999).  Put another way, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (citation omitted).

With respect to Greenwood, plaintiff's claim must be dismissed because Greenwood is a private towing company, not a state actor.  And, plaintiff has not pled any facts plausibly suggesting that the BPD or any other state actor "dominated" Greenwood's activity to the extent that would convert Greenwood's towing of plaintiff's tractor into State action.  With respect to the BPD Defendants, plaintiff's claim must be dismissed because plaintiff has not sufficiently stated facts to indicate that the BPD Defendants had any responsibility for or participation in the deprivation of plaintiff's property interest.  In fact, plaintiff clearly alleges that his vehicle was towed by Greenwood.  *See* Complaint ¶ 41.  "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Deshaney* v. *Winnebago County Dep't of Social Services*, 489 U.S. 189, 195 (1989).  Accordingly, I will dismiss Count I of plaintiff's Complaint with respect to Greenwood and the BPD Defendants.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const., amend. IV.  A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  The Fourth Amendment's protections proscribe "only

governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* (internal quotation marks omitted).

As noted, plaintiff does not allege that BPD seized his vehicle; rather, his allegations are that Greenwood towed the vehicle. Plaintiff's Fourth Amendment claim against Greenwood must be dismissed because Greenwood is not a state actor or a government official. Plaintiff's unlawful seizure claim against the BPD Defendants must be dismissed because plaintiff's vehicle was towed by Greenwood, not by BPD. The only basis of his claims against the BPD Defendants appears to be that the BPD Defendants violated the law in investigating the incident *after* the vehicle was towed. Accordingly, I will dismiss Count II of plaintiff's Complaint with respect to Greenwood and the BPD Defendants.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "[R]ights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority. The Equal Protection Clause does not . . . add anything to the rights which one citizen has under the Constitution against another." *United Bhd. Of Carpenters & Joiners, Local 610* v. *Scott,* 463 U.S. 825, 831 (1983) (internal quotation marks and citations omitted). A local government may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury . . . ."  *Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658, 694 (1977).

The predicate for plaintiff's Equal Protection claim is entirely unclear.  In any event, plaintiff's Equal Protection claim against Greenwood must be dismissed because Greenwood is not a state actor.  Plaintiff's Equal Protection claim against the BPD Defendants must be dismissed because plaintiff makes no allegation that the actions of the BPD Defendants were discriminatory in any way or that he was treated differently than any other similarly situated person.  Accordingly, I will dismiss Count IX of plaintiff's Complaint with respect to Greenwood and the BPD Defendants.

2.

As noted, Adenekan did not respond to the Complaint.  However, it is clear from the face of the Complaint that plaintiff's federal constitutional claims against Adenekan are without merit, as plaintiff does not allege that Adenekan is a state actor.

At the outset of the case, plaintiff filed a motion for leave to proceed *in forma pauperis*. ECF 2; *see* 28 U.S.C. § 1915; *see also Denton v. Hernandez*, 504 U.S. 25, 31 (1992) ("In enacting the federal in forma pauperis statute, Congress intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs of litigation." (internal quotation marks omitted)).  I granted that motion on June 26, 2013.  ECF 4.

Under 28 U.S.C. § 1915(e)(2)(B)(ii), which governs proceedings *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state

a claim on which relief may be granted." This provision recognizes that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton*, *supra*, 504 U.S. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Because plaintiff's Complaint fails to state a claim for relief against Adenekan under the Due Process Clause, the Equal Protection Clause, or the Fourth Amendment, I will also dismiss the federal claims against Adenekan, with prejudice (*i.e.*, Counts I, II, and IX). *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.

As indicated, the Complaint contains several Counts based on Maryland law. This Court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331(a)(1), which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012). Section 1367(a) of Title 28 of the United States Code governs supplemental jurisdiction over plaintiff's State law claims. It states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In *ESAB*, 685 F.3d 376, the Fourth Circuit described the Supreme Court's traditional approach to supplemental (or "pendent") jurisdiction, *id.* at 394 (internal citations omitted):

> [S]o long as one claim in an action presented a federal question on the face of the well-pleaded complaint, a court could exercise jurisdiction over the entire constitutional case or controversy. It does not follow, however, that the federal court had original jurisdiction over the entire case; rather, it had original jurisdiction over at least one claim, allowing the exercise of supplemental/pendent jurisdiction over the remaining claims. And the Supreme Court subsequently

- 13 -

recognized that, when the exercise of pendent jurisdiction over these claims became "inappropriate," district courts had inherent authority to remand them to state courts.

Pursuant to § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Id.* at 110; *see also ESAB*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."). Further, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'" *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan*, 58 F.3d at 106).

I will dismiss plaintiffs' federal claims in Counts I, II, and IX, with prejudice. In the absence of federal question jurisdiction, I will exercise my discretion and decline to exercise supplemental jurisdiction over the remaining claims under Maryland law, which implicate legal issues appropriate for a resolution by a Maryland State court. Therefore, the claims under Maryland law are dismissed, without prejudice to plaintiff's right to pursue such claims in a Maryland State court.

**Conclusion**

For the foregoing reasons, the Court will grant dismiss Counts I, II, and IX, with prejudice.  And, the Court will dismiss the State law counts (Counts III, IV, V, VI, VII, VIII, and X), without prejudice.  A separate Order follows.


Date:   April 29, 2014                          _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge